UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEREK ATWATER, | ) | NO. 1:17-cr-0222-JMS-TAB-06 |
| a/k/a Shorty, | ) | |
| JAMES O. BEASLEY, | ) | -11 |
| a/k/a Jake, | ) | |
| RICHARD BERNARD GRUNDY, III, | ) | -12 |
| a/k/a White Boy, | ) | |
| GILBERTO VIZCARRA-MILLAN, | ) | -13 |
| a/k/a G, | ) | |
| EZELL NEVILLE, | ) | -15 |
| a/k/a Bo, | ) | |
| UNDRAE MOSEBY, | ) | -17 |
| a/k/a Soundrae Evans, | ) | |
| MARK T. WILLIAMS, | ) | -18 |
| a/k/a Savage, | ) | |
| | ) | |
| Defendants, | ) | |

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, through Bradley A. Blackington, Assistant United States Attorney, respectfully moves this Court to empanel an anonymous jury to hear the case against the above-captioned defendants.

**Statement of Facts**

1

The defendants are charged with conspiring to distribute controlled substances and related offenses. The Superseding Indictment in this case alleges that the defendants participated in an extensive conspiracy to distribute methamphetamine, heroin, cocaine, and marijuana from August 2016 until their arrest on November 17, 2017. The conspiracy involved the acquisition of controlled substances in Arizona, the transportation of these controlled substances from Arizona to Indianapolis, the storage of these controlled substances in various locations in Indianapolis, and the distribution of these controlled substances in the streets of Indianapolis. Specific overt acts alleged that all of the defendants, except for James Beasley, possessed firearms and/or ammunition in furtherance of their drug trafficking activity. Investigators seized approximately thirty firearms and large quantities of ammunition during their investigation. In addition, the Superseding Indictment alleges that the leader of this conspiracy, Richard Grundy, III, used social media to threaten to kill people who cooperated with the federal government in criminal investigations.

**Argument**

To protect the safety of the jurors and the integrity of the judicial process, the government requests the Court to not disclose to the parties or the public the names, home addresses, or places of employment of prospective and empaneled jurors. Further, the government requests that from the time each juror survives any challenges for cause and peremptory challenges until the

2

end of the trial, the jurors be directed to enter and exit the building through the rear entrance of the courthouse. Such alternate access will lessen the jury members' exposure to members of the public and the press. The only information that should be divulged regarding home addresses should be a reference to the general area of a juror's residence. For example, a juror from the Indianapolis suburbs would be instructed to respond to questions about his residence or her residence as, "north suburbs, west suburbs, etc." Likewise, a juror who resides in Indianapolis would only reveal the general neighborhood where he or she lives, for example, "Lawrence, Butler-Tarkington, or Pike Township." Similarly, jurors should be instructed not to identify their specific places of work, and should refer only to their general field of employment. For example, a juror who works as a teacher for Broad Ripple Magnet High School would be instructed to respond that they work as a teacher for the Indianapolis Public School district. In this manner, attorneys and defendants will have enough information to determine if a particular juror is suitable to serve, without revealing the juror's exact residence or place of employment.

The use of anonymous juries is constitutional and a matter properly committed to the discretion of the district court. *United States v. Crockett,* 979 F.2d 1204, 1215 (7th Cir. 1992). Empaneling an anonymous jury remains an extreme measure that becomes warranted only where strong reason exists to believe that the jury needs protection. *United States v. Benabe,* 654 F.3d 753 (7th Cir. 2011); *United States v. Mansoori,* 304 F.3d 635, 650 (7th Cir. 2002)

(citing *Crockett*, 979 F.2d at 1215). As the Seventh Circuit has indicated, "[a]n anonymous jury raises the specter that the defendant is a dangerous person from whom the juror must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence." *Mansoori*, 304 F.3d at 650 (external citations omitted). In addition, juror anonymity may deprive the defendants of information that might help them to make appropriate peremptory challenges during jury selection. *Id.*

Despite the Seventh Circuit's position that district court judges should remain "highly circumspect" in ordering the empanelment of anonymous juries, the Seventh Circuit has never held that it remains presumptively inappropriate to empanel an anonymous jury. *United States v. Morales,* 655 F.3d 608, 620. Instead, where the district court concludes that the circumstances "strongly suggest" that the jury needs protection and that reasonable precautions (including preliminary comments to the venire and final instructions) can mitigate any prejudice to the defendants, the Seventh Circuit has sanctioned the empanelment of an anonymous jury. *Id.* at 620-21.

In deciding whether to empanel an anonymous jury, the Court must weigh the defendant's interests in preserving the presumption of innocence and conducting a useful voir dire against the jurors' interest in remaining free from real or threatened violence and the public's interest in having the jury render a fair and impartial verdict. *Mansoori,* 304 F.3d at 650; *see also United States v. Quinones,* 511 F.3d 289, 295 (2d. Cir. 2007). In weighing these interests, a

4

district court must consider the following factors: "the defendant's involvement in organized crime; his participation in a group with the capacity to harm jurors; whether he previously has attempted to interfere with the judicial process; the severity of the punishment that the defendant would face if convicted; and whether publicity regarding the case presents the prospect that the jurors' names could become public and expose them to intimidation or harassment." *Mansoori,* 304 F.3d at 650-51.

All five *Mansoori* factors support the government's request for an anonymous jury in this case. First, all of the defendants participated in organized criminal activity. The Superseding Indictment demonstrates that the defendants were part of an organized group whose purpose was criminal activity, specifically drug trafficking. (Dkt. 280.) The organization included a source of supply in Arizona, drug couriers who traveled from Arizona to Indianapolis, leadership figures in Indianapolis, and mid-level distributors. (*Id.* at 3-5.) This continuity of a criminal enterprise with differentiated roles among the participants provides the members of the charged conspiracy with the necessary structure to satisfy the goals of the enterprise and to prevent the detection of its criminal activities.

Second, the members of the charged conspiracy have the capacity to harm jurors. Several individuals who participated in crimes with these defendants remain unindicted. These unindicted co-conspirators have the capacity to harm jurors. During a recorded conversation from his place of

5

incarceration, James Beasley attempted to recruit another individual to attend the trial during the testimony of someone whom Beasley expects to testify.[1] Beasley made it clear that he feared that this individual's purported testimony would convict him and that he wanted the party to his recorded conversation to attend the trial to attempt to intimidate the witness. As individuals attend the trial to intimidate witnesses, they may also intimidate jurors. Consistent with the threat of violence, many of the charged defendants have criminal histories that include convictions for crimes of violence and resisting law enforcement. Derek Atwater has two convictions for Armed Robbery in 2009, along with numerous other arrests for crimes of violence. James Beasley has nine prior convictions for resisting law enforcement, along with several convictions for firearms offenses. Richard Grundy, III has three convictions for resisting law enforcement and one conviction for obstruction of justice, along with numerous other arrests for crimes of violence including murder. Gilberto Vizcarra-Millan and Mark Williams were involved in a high-speed chase that led to their apprehension during the investigation leading to the indictment in this case. Vizcarra-Millan also has previously been arrested for crimes of violence, a firearms violation, and failure to appear in court. Ezell Neville has three previous convictions for resisting law enforcement, three previous convictions for firearms violations, one conviction for aggravated battery, and numerous

---

[1] The government will submit a recording of this telephone conversation to the Court upon request. The government intends to use this telephone conversation in the prosecution of its case-in-chief.

other arrests for crimes of violence including murder. Undrae Moseby has three prior convictions for resisting law enforcement, four convictions for firearms violations, and arrests for other crimes of violence. Mark Williams has convictions for resisting law enforcement, robbery, burglary, battery resulting in serious bodily injury, and battery resulting in bodily injury.

      Third, some of the charged defendants have already attempted to interfere with the judicial process. This Court has witnessed numerous individuals appear in court for pretrial conferences and change of plea hearings and either hesitate or decline to enter guilty pleas because of their fear that Richard Grundy would cause them harm. Grundy's efforts to intimidate his co-defendants and prevent them from even entering guilty pleas constitutes a direct effort to interfere with the judicial process. Moreover, as noted above, James Beasley has attempted to recruit another individual to come into court and intimidate an individual who Beasley believes will testify against him. Finally, as the Superseding Indictment alleges, Grundy has used social media to threaten to kill people who cooperate with the federal government. (*Id.* at 10.) By attempting to intimidate witnesses and their co-defendants, the defendants in this case have engaged in repeated conduct designed to interfere with the judicial process.

      Fourth, the severity of the punishment that the defendants face adds to the potential threat to the jury. If convicted at trial on Count One of the Superseding Indictment, all of the defendants face mandatory sentences of ten

years of imprisonment. As outlined during accept/reject hearings in this case, the advisory Sentencing Guidelines ranges for these defendants are much higher, with many defendants facing advisory guidelines ranges of thirty years' to life imprisonment. Richard Grundy himself faces a mandatory minimum sentence of life imprisonment if convicted of Count Two of the Superseding Indictment.

Fifth, publicity regarding the case presents the prospect that the jurors' names could become public and expose them to intimidation or harassment. Immediately before the arrest of these defendants, the Indianapolis Star ran a three-part, front page series detailing the alleged atrocities committed by the "Grundy Crew" that were charged during a recent failed state court prosecution. https://www.indystar.com/story/news/crime/2017/12/14/richard-grundy-case-offers-clues-indianapolis-growing-homicide-problem/598346001/; https://www.indystar.com/story/news/crime/2017/12/17/how-fake-witnesses-exposed-surveillance-operation-unraveled-grundy-murder-investigation-indianapolis/920555001/; https://www.indystar.com/story/news/crime/2017/12/21/how-bloodshed-continued-after-richard-grundy-iii-got-out-jail-indianapolis-crime/920644001/. Extensive press coverage also followed the indictments in the instant case.[2]

---

[2] This press coverage occurred despite the decision of the United States Attorney's Office and

https://www.indystar.com/story/news/crime/2017/11/20/richard-grundy-indianapolis-crime-us-attorney-fbi-indiana-news-us-marshal/880084001/; https://www.indystar.com/story/news/2018/11/25/grundy-crew-meth-marijuana-witness-intimidation/1576520002.  It is reasonable to believe that this media attention will resume both immediately before and during the trial in this matter.   This media attention will exacerbate the potential threat to jurors presiding over this case.

Based upon the presence of the five factors outlined by the Seventh Circuit in *Mansoori,* the government requests the Court to empanel an anonymous jury in this case.   The government also requests the Court to take reasonable efforts to neutralize any impact that an anonymous jury might have on the trial process. The Court will, of course, instruct the jury before selection, after selection and before trial, as well as after the trial, that the defendants are presumed innocent. The Court should also inform the jury that the use of anonymous juries is simply one of a number of procedures used by federal courts to avoid contact between jurors and the parties and to ensure that both sides receive a fair and impartial determination of the case by the jury. *Crockett*, 979 F.2d at 1217.   Further, the Court should conduct an in-depth *voir dire* with respect to the jurors' personal backgrounds. *See United States v. Barnes,* 604 F.2d 121, 137-40 (2d Cir. 1979) (finding that as long as a

---

the Federal Bureau of Investigation to refrain from conducting a press conference or press briefing after the indictment in this case.

defendant's substantial rights are protected by voir dire designed to uncover bias as to issues in the case and as to the defendant himself, then reasonable limitations on the questions should not be disturbed on appeal).   The District Court could require every prospective juror to complete a written questionnaire that inquires into a broad variety of personal information, including the quadrant of the city in which the juror resides, their educational history, marital status, military service, employment status and work description, their spouse's and children's employment, their experience with crime, drugs, and law enforcement, and their exposure and reaction to pretrial publicity. *See United States v. Edmond*, 52 F.3d 1080, 1092-1093 (DC Cir. 1995).   This questionnaire would uncover any potential bias among jurors as to issues in the case and as to the defendants charged.

## Conclusion

Based on the foregoing reasons, the government is requesting that the Court not disclose to the parties or the public the names, home addresses, or places of employment of prospective and empaneled jurors.   This limited information is not necessary when attempting to glean whether a juror can render a fair and impartial verdict. Information regarding the general neighborhoods in which the prospective jurors live and the general nature of their work is sufficient. The names of prospective jurors, to the extent they provide information about ethnicity, are not relevant to meaningful *voir dire*.

Further, the government requests that, from the time each juror be directed to enter and exit the building through the rear entrance of the courthouse. These measures are necessary to assure the public's right to a fair trial by protecting the jury from interference and intimidation.

Moreover, as set forth above, those precautions will not deprive the defendants of their right to meaningful jury selection, nor diminish the presumption of innocence. Here, the burden to any due process claim is slight compared to the Court's interest in safeguarding the integrity of the judicial process. Moreover, any burden to due process can be alleviated through a proper jury instruction. Most commonly, courts have explained to the jurors that their privacy and identities need protection from the media and the curious.

For the reasons set forth above, the government respectfully requests that this Court rule in accordance with the arguments made above and empanel and anonymous jury. The government further respectfully requests that, during the trial and deliberations, the selected jurors be directed to enter and exit the courthouse through the rear entrance of the building.

    Respectfully submitted,

    JOSH J. MINKLER
    United States Attorney

  By: _s/Bradley A. Blackington_
    Bradley A. Blackington
    Senior Litigation Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on **June 12, 2019**, a copy of the foregoing was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

>s/Bradley A. Blackington
>_____
>Bradley A. Blackington
>United States Attorney's Office
>10 W. Market St., Suite 2100
>Indianapolis, IN   46204
>Phone:   (317) 226-6333
>Fax:   (317) 226-6125
>E-mail: bradley.blackington@usdoj.gov